**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| | ) |
| **WILLIAM C. TUTTLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Civil Action No. 13-365 (RMC)** |
| | ) |
| **SALLY JEWELL,**[1] | ) |
| **Secretary of the Interior,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

_____

**MEMORANDUM OPINION**

William B. Tuttle had a fifty-year lease with the Colorado River Indian Tribes on some tribal land in the County of Riverside, California.  In 2010, the Superintendent of the Colorado River Agency of the Bureau of Indian Affairs, U.S. Department of the Interior, terminated the lease after finding that Mr. Tuttle had violated several of its provisions. Following the affirmance of that decision in the administrative appeals process, Mr. Tuttle filed suit in this Court.  Defendants have moved to transfer this case to the U.S. District Court for the Central District of California.  Mr. Tuttle opposes.  The Court will deny the motion.

**I.  FACTS**

The Colorado River Indian Tribes have leased land in Riverside County, California to Mr. Tuttle since 1977.  Compl. [Dkt. 1] ¶ 13.  Under the terms of the fifty-year lease, Mr. Tuttle was permitted to reside on the property and conduct business there.  *Id.* ¶¶ 2, 14, 21.  In turn, he was required, among other obligations, to pay rent to the Tribes, maintain

---

[1] Secretary Jewel was sworn in as Secretary on April 12, 2013; she is automatically substituted as a party for Kenneth L. Salazar, the former Secretary of Interior.  *See* Fed. R. Civ. P. 25(d).

public liability insurance, and pay a percentage of his business's gross receipts to the Tribes. *Id.* ¶¶ 19, 21.

On March 2, 2010, the Superintendent of the Colorado River Agency of the Bureau of Indian Affairs ("BIA") terminated the lease for alleged violations of its terms by Mr. Tuttle. *Id.* ¶ 38. This decision was affirmed on appeal by BIA's Acting Western Regional Director on July 19, 2010. *Id.* ¶ 47. Nearly two and a half years later, on December 18, 2012, the Interior Board of Indian Appeals ("IBIA") sustained that decision. *Id.* ¶¶ 49-50.

Mr. Tuttle sued Sally Jewel (Secretary of the Department of the Interior), Kevin Washburn (Assistant Secretary for Indian Affairs), and the Department of the Interior (collectively, "Interior"). *See* Compl. [Dkt. 1]. Challenging the IBIA's decision, Mr. Tuttle argues that Interior's termination of the lease was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*. *Id.* ¶¶ 55-63. Among other things, he seeks a judgment declaring that termination of the lease was void *ab initio* and an order that directs Interior to restore the lease retroactively to the date of its termination.[2] *Id.* ¶¶ 59, 61, 63.

On May 23, 2013, Interior moved to transfer venue to the U.S. District Court for the Central District of California, the district where the land is located. *See* Transfer Mot. [Dkt. 4]. Mr. Tuttle opposed, *see* Opp. [Dkt. 6], and Interior filed a Reply, *see* Dkt. 7.[3]

---

[2] Because "IBIA's ruling is . . . final agency action subject to review under the APA," *Feezor v. Babbit*, 953 F. Supp. 1, 5 (D.D.C. 1996), this Court has subject matter jurisdiction under 5 U.S.C. §§ 701 *et seq.* and 28 U.S.C. §§ 1331 and 2201.

[3] Mr. Tuttle moved to file a surreply, which the Court accepts. *See* Surreply [Dkt. 8].

## II. LEGAL STANDARD

Interior's venue transfer motion is made pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision whether to transfer a matter is discretionary and factually-dependent. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964))); *Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.,* 728 F. Supp. 6, 7 (D.D.C. 1989) ("The decision whether to transfer under § 1404(a) is left largely to the district court's discretion, and of necessity depends on the facts of each case.").  Generally, a plaintiff's choice of forum receives considerable deference, *Air Line Pilots Ass'n v. E. Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987), and the moving party "bears the burden of establishing that the transfer of [the] action is proper." *Trout Unlimited v. U.S. Dep't of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996).

The party seeking transfer thus must make two showings:  (1) the plaintiff could have brought the action in the proposed transferee district originally; and (2) considerations of convenience and the interest of justice weigh in favor of transfer. *See Van Dusen*, 376 U.S. at 622-23; *Trout Unlimited*, 944 F. Supp. at 16.  In evaluating this latter showing, courts balance a number of case-specific private and public interest factors, including (1) plaintiff's forum choice; (2) defendant's forum choice; (3) whether the claim arose elsewhere; (4) convenience of the parties; (5) convenience of the witnesses; (6) ease of access to the proof; (7) transferee court's familiarity with the laws at issue; (8) congestion of both courts; and (9) local interest in deciding

local controversies at home.  *See Stewart Org.*, 487 U.S. at 29-30; *Trout Unlimited*, 944 F. Supp. at 16.

### III. ANALYSIS

#### A.   Venue Is Proper in the Central District of California

The threshold question under § 1404(a) is whether Mr. Tuttle could have brought his action in the Central District of California, the transferee court proposed by Interior.  Section 1391(e)(1) of Title 28 governs venue in cases "in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States . . . ."  Such matters may be brought in any judicial district in which:  "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  *Id.*

Interior argues that venue would be proper in the Central District of California under § 1391(e)(1) because both the property affected by the lease and Mr. Tuttle are located there.  Transfer Mot. at 5.  In his opposition, Mr. Tuttle addresses only whether transfer is appropriate under 28 U.S.C. § 1404(a) and does not argue that venue would be improper in the Central District of California.  He has thus waived any argument on the latter point.  *See CSX Transp., Inc. v. Commercial Union Ins., Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996); *see also Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002).

The Court finds that venue is proper in this case both in the District of Columbia and in the Central District of California.  Venue is proper in this Court under § 1391(e)(1)(A) because the Secretary of the Interior and Assistant Secretary for Indian Affairs "reside[]" in the

District of Columbia. *See Lamont v. Haig*, 590 F.2d 1124, 1126-32 (D.C. Cir. 1978) (interpreting 28 U.S.C. § 1391(e)). Venue is also proper in the Central District of California under § 1391(e)(1)(B) because that district is where "a substantial part of the events or omissions giving rise to the claim occurred." Not only is the property at the center of Mr. Tuttle's claim located within the Central District of California, *see* 28 U.S.C. § 84(c) (defining judicial district of the Central District of California), but also, Mr. Tuttle and the Colorado River Indian Tribes reside within that jurisdiction. Compl. ¶ 2; Transfer Mot. at 9. Thus, the Central District of California is a district where the case "might have been brought." 28 U.S.C. § 1404(a); *see also Van Dusen*, 376 U.S. at 622-23.

Accordingly, the question becomes whether transfer is appropriate under 28 U.S.C. § 1404(a).

### B.  Transfer Is Not in the Interest of Justice

In its Motion to Transfer, Interior emphasizes two private factors and two public factors that it contends weigh in favor of transfer. Transfer Mot. at 6-11. As for the private considerations, Interior asserts that "the people, the real property, and the business operations that are potentially affected by the lease cancellation are located either in the Central District of California, or in much closer proximity to that district than to the District of Columbia." *Id.* at 8. Although Interior agrees with Mr. Tuttle that the convenience of witnesses is not at issue because the matter is limited to review of the administrative record, it contends that convenience to the *parties* favors transfer. *Id.*; *see also* Opp. at 3. Interior claims that the Central District of California is more convenient for the parties because all of the relevant actors (Mr. Tuttle, the Colorado River Indian Tribes, and the BIA officials involved in the initial decisions to terminate the lease) reside in either California or Arizona. *Id.* at 9. With respect to the public factors,

Interior argues that this lawsuit "is a distinctly local controversy that should be decided in California," *id.*, and that the relative congestion of this Court and the Central District of California weighs in favor of transfer. *Id.* at 11.

Mr. Tuttle responds that the Court should retain jurisdiction because, as plaintiff, "his choice of forum is entitled to substantial weight." Opp. at 2. Mr. Tuttle explains that his lawyer of the past five years, who resides and practices in Washington, D.C., is the only attorney that he trusts to handle this legal representation efficiently and effectively. Surreply Decl. ¶¶ 2-5. Claiming limited financial resources, he expresses concern about his ability to afford local counsel or his attorney's travel to California. *Id.* ¶¶ 4-5. Mr. Tuttle also discounts Interior's arguments concerning convenience to the parties, noting the nature of the judicial review that this matter requires, *i.e.*, a review of Interior's administrative record. According to Mr. Tuttle, the "Court's task is one of contract interpretation," an issue for which "the administrative record will speak for itself." Opp. at 3. Finally, Mr. Tuttle argues that to the extent the Central District of California has a speedier case resolution than this Court, any perceived efficiency from transferring "would be eradicated by the time and expense required for both parties and the Courts to switch gears and process this controversy" in the new venue. *Id.* at 4.

After weighing all of the private and public interest considerations, *see Trout Unlimited*, 944 F. Supp. at 16, the Court finds that retaining this lawsuit in the District of Columbia is appropriate under 28 U.S.C. § 1404(a). The private considerations raised by Interior do not favor transfer of the matter, especially considering the nature of this proceeding. It is true that Mr. Tuttle's choice of forum receives diminished deference because this jurisdiction is not his home forum, *Marks v. Torres*, 576 F. Supp. 2d 107, 111 (D.D.C. 2008), and Interior seeks transfer to the jurisdiction in which Mr. Tuttle resides. *Airport Working Grp. Orange Cnty. v.*

*U.S. Dep't of Defense*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002).  Yet, Interior's choice of forum does not weigh heavily in the analysis either.  Resolution of Mr. Tuttle's claims will turn entirely upon the administrative record before Interior.  The specifics of the land located in California are irrelevant, and it is of no moment that BIA's Superintendent and Acting Regional Director do not reside in Washington, D.C.   In fact, the decisionmaking in question did not occur in California at all, but rather in Arizona, where the Superintendent and Regional Director are located, and in Arlington, Virginia, where the final IBIA decision was issued.  *See* Reply at 4 n.1.  Thus the normal "focus [in APA cases] on where the decisionmaking process occurred," *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009), does not counsel transferring this case to the Central District of California.

Likewise, party and witness convenience and ease of access to proof do not favor transfer.  In an APA case, "neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the analysis."  *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010).  This follows from the nature of the judicial review that such cases receive.  Here, the matter is limited to the record developed by Interior.  The Court will resolve the litigation through reference to that record.  To the extent the matter requires an understanding of the relevant relationship among the parties or disposition of the land at issue, that information will be reflected in the written lease, its amendments, and the documented agency decisionmaking.[4]

---

[4] Mr. Tuttle's convenience claim — the availability of his current counsel — is largely inconsequential to the analysis as well. *See McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40 (D.D.C. 2003) ("Any inconvenience to plaintiff's counsel caused by the transfer of this action is not a factor that carries considerable weight in the Court's determination of whether or not to grant a motion to transfer pursuant to section 1404(a)."). However, even a factor warranting minimal consideration carries more weight in the decision of whether to transfer than Interior's non-existent need to call California witnesses or parties before a District of Columbia court.

The public interest considerations do not support transfer in any greater measure. District courts in the District of Columbia and the Central District of California are presumed to be equally able to handle federal claims, *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009), and, if anything, this Court receives more APA claims than its western colleagues given the number of federal agencies and officials located in Washington, D.C. Presumably there is greater local interest in California about whether Mr. Tuttle can maintain his businesses (and pay rent and profits to the Tribes), but that interest is not germane to whether Interior acted in an arbitrary or capricious fashion or in violation of the law when it terminated Mr. Tuttle's lease.

Nor does the issue of court congestion alter the calculus. Interior contends that the Central District of California resolves matters approximately four months faster than the District of Columbia. Transfer Mot. at 11. Case disposition statistics may not always tell the whole story. Consider, for instance, that from April 1, 2011 to March 31, 2012, nearly twenty percent of the new civil filings in the Central District of California related to prisoner petitions. 2012 United States Courts, Federal Judicial Caseload Statistics, Table C-3: Civil Cases Commenced, by Nature of Suit and District, During the 12-Month Period Ending March 31, 2012, *available at* http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2012/tables/C03Mar12.pdf (last visited July 8, 2013). During that same period, prisoner petitions made up approximately eleven percent of the filings in this District. Moreover, from April 1, 2011 to March 31, 2012, the Central District of California had approximately four times the number of civil cases pending disposition than this District. 2012 United States Courts, Federal Judicial Caseload Statistics, Table C: Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending March 31, 2011 and 2012, *available at*

http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/FederalJudicialCaseload

Statistics2012.aspx (last visited on July 8, 2013).   These statistics undercut the import of the

Central District of California's median time interval of disposition.   Given the frequency in

which prisoner petitions raise similar issues, it is entirely possible that the Central District of

California's median time of resolution is buoyed by its quick disposition of that portion of its

civil docket.   In other words, it is unclear that transferring this case to the Central District of

California would produce a quicker resolution.   Even if there were clarity on this point, as Mr.

Tuttle notes, Opp. at 4, the parties likely would not achieve a faster disposition through

relocation due to the time that would be lost in effectuating the transfer.   Accordingly, the Court

concludes that this factor is at least neutral as to transfer, if not favoring retention of the lawsuit

here.

The Court thus finds that the "consideration[s] of convenience and fairness" in

this case weigh in favor of retaining the matter.   *See Stewart Org.*, 487 U.S. at 29.

## IV. CONCLUSION

Plaintiff William C. Tuttle has chosen to file his lawsuit in the District of

Columbia.   While the parties agree that this case could have been brought in the Central District

of California, upon balancing the factors that affect venue, the Court concludes that a transfer

contrary to Mr. Tuttle's choice is unwarranted.   Defendants' motion to transfer [Dkt. 4] will be

denied.   A memorializing Order accompanies this Memorandum Opinion.


/s/
ROSEMARY M. COLLYER
United States District Judge

DATE: July 9, 2013

9